UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:19cv92-MOC

| | |
|---|---|
| **RAYMOND WAMPLER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| **ANDREW SAUL,** ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 11, 13). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

Plaintiff brought this action, under 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of defendant's final administrative decision denying his November 24, 2015, applications for a period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) under Titles II & XVI of the Social Security Act ("the Act").[1] Plaintiff's DIB and SSI applications initially alleged disability onset of November 24, 2013, but the onset date was

---

[1] Plaintiff previously filed DIB and SSI applications on February 2, 2011, which were administratively denied on April 15, 2011, and apparently not appealed. (Tr. 106-107, 186-190).

-1-

later amended at the hearing to April 1, 2016. (Id.). These applications were denied initially on July 8, 2016, and, upon reconsideration, on December 22, 2016. (Id.). Plaintiff timely requested an administrative hearing, which was held on November 29, 2017. (Tr. 62-81). Since plaintiff's date last insured (DLI) for DIB benefits was before his alleged amended onset date, his DIB application was rendered moot. (Tr. 36).

An ALJ decision denying benefits was made on December 8, 2017. (Tr. 36-54). Plaintiff appealed to defendant's Appeals Council (AC), which, on January 25, 2019, denied plaintiff's request for, thereby causing the ALJ's decision to become the "final decision" of the Commissioner. (Tr. 1-6). In denying review, the AC noted that additional evidence submitted by plaintiff after the ALJ's decision either did not show a reasonable probability it would change the outcome of the decision or did not pertain to the period under review. (Tr. 2).

Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations

omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step,

the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In a decision dated December 8, 2017, (Tr. 36-54), the administrative law judge ("ALJ") found plaintiff had the following severe impairments: degenerative disc disease, status post myocardial infarction with stent placement, coronary artery disease, anxiety disorder, and substance use disorder. (Tr. 39, Finding 2). The ALJ, with detailed explanation, found plaintiff's neurofibromytosis to be non-severe. (Tr. 39-40).

The ALJ assessed moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. (Tr. 41). The ALJ assessed mild limitations in interacting with others and in adapting or managing oneself. (Id.). However, in discussing the areas of moderate limitations, the ALJ noted plaintiff is able to finish things he starts, pay attention for as long as needed, and follow both written and spoken instructions. (Id.).

The ALJ further found plaintiff had the residual functional capacity (RFC)[2] to perform a restricted range of light work. (Tr. 42, Finding 4). Physically, the ALJ limited plaintiff to standing and walking for four hours and to sitting for six hours in an eight-hour day. (Id.). The ALJ further limited plaintiff to no climbing of ladders, ropes, or scaffolds, but noted that he can perform other postural activity occasionally. (Id.). The ALJ also limited plaintiff to no concentrated exposure to extreme heat, cold, wetness, and humidity, and not even moderate exposure to hazards. (Id.).

Mentally, the ALJ limited plaintiff to simple, unskilled work. (Id.). The ALJ detailed the evidence considered in formulating the RFC. (Tr. 40-52). Therefore, the ALJ performed a

---

[2] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. § 404.1545.

-5-

functional analysis in determining RFC. The ALJ further found that plaintiff had a high school education and was 44 years old on the alleged amended disability onset date, making him a younger individual under the disability regulations. (Tr. 52, Findings 6 & 7).

Based on the established RFC, the ALJ denied benefits, with the help of vocational expert (VE) testimony, at Step 5 of the sequential evaluation process, finding plaintiff would be able to perform other jobs existing in significant numbers in the national economy. (Tr. 52-53, Finding 9). Having propounded a hypothetical question to the VE with the established RFC, the VE testified such a hypothetical person could perform certain, unskilled light exertional jobs. (Tr. 79). The VE listed the jobs of sorter, enumerated in the Dictionary of Occupational Titles (DOT) (DOT number 521.687-102); sander (DOT number 761.687-010); and assembler (DOT number 706.684-022). (Tr. 79-80). The VE further stated her testimony was not inconsistent with the DOT. (Tr. 80-81).

## V. Discussion

Plaintiff raises two challenges to the ALJ's decision: (A) the ALJ's mental RFC is not supported by substantial evidence, especially with regard to plaintiff's alleged inability to concentrate, alleged post-traumatic stress disorder, and alleged bipolar disorder and (B) the ALJ's appointment did not comply with the Appointment Clause of the Constitution. As discussed below, these arguments do not present a basis for remand.

### A. The ALJ's Mental RFC is Supported by Substantial Evidence

For the following reasons, the Court finds that substantial evidence supports the ALJ's mental RFC, despite plaintiff's alleged inability to concentrate, alleged post-traumatic stress disorder, and alleged bipolar disorder. No further function-by-function analysis is required.

#### 1. The ALJ Accounted for Plaintiff's Ability to Stay on Task

Plaintiff erroneously cites to Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) as a basis for remand, arguing that the ALJ failed to consider plaintiff's ability to stay on, and complete, tasks even though limiting him to simple, unskilled work in the RFC. (Tr. 42, Finding 4). But the ALJ properly accounted for plaintiff's ability to stay on task despite finding, as noted above, that plaintiff had a moderate limitation in concentration, persistence or pace ("CPP"). The ALJ qualified his CPP finding by noting that "a Function Report documents that the claimant is able to finish things he starts, pay attention for 'as long as needed,' and follow instructions." (Tr. 41). This Function Report dated May 16, 2016, by plaintiff's father indicates that plaintiff can pay attention "as long as needed" and finishes what he starts. (Tr. 355).

Furthermore, the ALJ noted that "although the claimant was overly lethargic when presenting to consultative examiner Dr. Reavis, he was able to provide enough information to show he was able to engage in a wide array of daily activities" and until March 2017 "was working as a volunteer peer support specialist, until he lost this position, due to relations with a female patient." (Tr. 49). The ALJ also remarked that plaintiff's "psychological symptoms were largely situational in nature" and he "did not seek consistent mental health treatment." (Tr. 50). The ALJ pointed out that plaintiff "did not consistently exhibit concentration, cognition, memory, or attention deficits, and he did not report significant anger, paranoia, isolation, or other personality/social issues that would preclude his ability to interact with others." (Id.). The ALJ also noted that the "record also shows that the claimant can maintain concentration and persistence well enough to attend to his personal needs, take care of his animals, perform household chores, prepare simple meals, drive, shop, pay bills, count change, use a checkbook, watch television, play video games, and fish." (Id.).[3]

---

[3] Since plaintiff had been awake for four days before examination and was unable to stay

In summation, the ALJ specifically found that "mental status evaluations and treatment notes do not indicate that the claimant's symptoms are of the severity to preclude the performance of simple, unskilled work." (Tr. 50). Here, the Court finds that the ALJ's analysis has satisfied Mascio. Accord Mann v. Berryhill, No. 1:17-CV-38-RJC, 2018 WL 1566337, at *7 (W.D.N.C. Mar. 30, 2018) (discussing Mascio, stating that "[a]n ALJ may still, however, assign claimants limitations to merely simple, routine tasks or unskilled work in the wake of a moderate CPP limitation. The ALJ must simply explain why further limitations in the RFC were not warranted."); Moorehead v. Berryhill, No. 3:17-CV-00351-FDW, 2018 WL 1175222, at *3 (W.D.N.C. Mar. 6, 2018) ("Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision[.]").

Here, as discussed above, the ALJ specifically mitigated Plaintiff's allegations of concentration difficulties while addressing his purported intellectual limitations. The ALJ pointed to examination records and Plaintiff's daily living activities, such as playing hours of computer games, driving a car, and managing his own funds. (Tr. 18, 20). The Court therefore finds that the ALJ supplied sufficient reasoning to excuse the absence of any limitation in the RFC that would directly address a moderate limitation in CPP.

In sum, the ALJ's discussion of the record is sufficient for this Court to meaningfully review the ALJ's conclusion; thus, remand is not appropriate. Accord Finney v. Berryhill, No. 5:16-CV-00188-MR, 2018 WL 1175229, at *5 (W.D.N.C. Mar. 6, 2018) (noting that the Mascio requirements are satisfied where the ALJ cites specific record evidence supporting claimant's

---

awake to complete the examination, the ALJ gave Dr. Reavis' opinions little weight. (Tr. 51).

ability to work despite her moderate difficulties in concentration, persistence or pace, including specific facts about the claimant's activities of daily living and relevant medical testimony and evidence).

**2. Alleged Bipolar Disorder and PTSD**

The ALJ found that plaintiff suffered from a severe substance abuse disorder and an anxiety disorder but did not find that plaintiff had a medically determinable bipolar disorder or post-traumatic syndrome (PTSD) disorder. (Tr. 39, Finding 2). As mentioned, plaintiff bears the burden of proof in establishing impairments. Pass, 65 F.3d at 1203. Plaintiff has failed to meet this burden. The medical evidence of record fails to establish a medically determinable bipolar disorder or PTSD disorder that lasted, or was expected to last, for a period of at least twelve months during the period under review as required by the Act.

    a.  **Bipolar Disorder**

Plaintiff reported having a bipolar disorder during a March 22, 2011, consultative examination, together with opioid dependence, performed in association with plaintiff's earlier filed February 2, 2011, disability applications, which were denied on April 15, 2011, and apparently not appealed. (Tr. 106-107, 186-190, 432). Therefore, as a matter of administrative res judicata, his alleged bipolar disorder was not deemed disabling as of April 15, 2011.

Furthermore, in that 2011 consultative examination, plaintiff reported he was diagnosed with a bipolar disorder at the Crisis Recovery Center. (Tr. 432). He also reported no history of impatient psychiatric hospitalizations. (Tr. 433). The Disability Determination Services ("DDS") obtained a discharge record dated May 10, 2010, from the Crisis Recovery Center, indicating that plaintiff had been enrolled for substance abuse and voluntary detox on August 1-2, 2007, on January 7, 2009, and on May 5, 2010. (Tr. 412). That discharge record makes no

mention of any bipolar diagnosis ever made. (Id.). Yet, plaintiff reported to Dr. Reavis in March 2011 that "in recent years" he was diagnosed with this disorder at the Crisis Recovery Center in North Carolina. (Tr. 432). The record evidence, however, does not support this.

Furthermore, on July 7, 2016, in conjunction with the current disability application under court review, medical consultant Dr. Jonathan Mayhew indicated that plaintiff had alleged bipolar disorder diagnosis in the past, but current medical records were insufficient to evaluate this past diagnosis. (Tr. 118). Therefore, in Dr. Mayhew's opinion, plaintiff had not presented medical evidence of bipolar disorder to establish it as a medically determinable impairment from alleged amended onset of April 1, 2016. On December 21, 2016, Dr. Darolyn Hilts noted the same and that plaintiff had not presented any additional medical evidence regarding bipolar disorder. (Tr. 153). Moreover, a search of the administrative record finds no psychiatric records confirming this diagnosis. Therefore, the ALJ correctly determined that plaintiff did not have bipolar disorder as a medically determinable impairment.

### b. PTSD

On April 6, 2015, the records of Community Family Healthcare contain a notation that plaintiff "has questionable PTSD that has not been dx per pt." (Tr. 506). There is an "impression/diagnosis" of PTSD together with opiate disorder in remission in one medical record dated March 5, 2017, apparently signed by Dr. Rollins, during a general examination at the Neil Dobbins Center. (Tr. 865). But a March 20, 2017, mental consult two weeks later while a patient at Mission Hospital only diagnosed PTSD per history. (Tr. 1021). The definitive diagnosis was unspecified anxiety. (Tr. 1068). Therefore, Dr. Rollins did not make a definitive diagnosis; rather, Dr. Rollins was merely noting the history given by plaintiff.

Although an April 25, 2017, record from Mission Hospital ER put down PTSD as past medical history, (Tr. 989), it only diagnosed anxiety and suicidal ideation with medication noncompliance, (Tr. 990). May 20, 2017 and July 17, 2017, ER records from Mission Hospital put down PTSD on a past medical history problem list, but only diagnosed back pain. (Tr. 921, 965).

This Court finds that the ALJ correctly determined that plaintiff does not have a medically determinable impairment of PTSD, as no definitive PTSD diagnosis appears in the medical records. In addition, there is no indication of what trauma occurred to produce any such traumatic diagnosis. Therefore, plaintiff has not only failed to meet his burden of producing such a medically diagnosed PTSD impairment, but he has also failed to show that such an impairment lasted, or was expected to last, the requisite 12-month period prescribed by the Act.

In light of all the above, the ALJ's RFC is supported by substantial evidence. In formulating a RFC, the ALJ is not required to discuss each and every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865–66 (4th Cir. 2014). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c).

Furthermore, it is the claimant's burden to establish how any medically determinable impairments affect functioning. See 20 C.F.R. §§ 404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-6, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir.

Nov. 6, 2012). Plaintiff has failed to meet that burden.

In addition, there is no requirement that an ALJ base his RFC finding, or any particular limitation in it, on a medical opinion. See Felton-Miller v. Astrue, 459 F. App'x 226, 230–31 (4th Cir. 2011) (unpublished) (explaining that an ALJ need not obtain an expert medical opinion to back a particular RFC but should base an individual's RFC on all available evidence); Smith v. Berryhill, No. 3:17-cv-00506-FDW, 2018 WL 3447187, at **8–9 (W.D.N.C. July 17, 2018); Griffin v. Comm'r, Soc. Sec. Admin., No. SAG-16-274, 2017 WL 432678, at *3 (D. Md. Jan. 31, 2017) ("[A]n ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC"; "[i]nstead, an ALJ is required to consider 'all of the relevant medical and other evidence.'") (quoting 20 C.F.R. §§ 404.1545 and 416.945).

### B. Plaintiff Failed to Raise Before the Agency His Appointments Clause Argument

Next, relying on Lucia v. Securities and Exchange Commission, 138 S. Ct. 2044 (2018), Plaintiff seeks a remand of his case to SSA for a new hearing on the grounds that the ALJ presiding over his claim is an inferior officer under the Appointments Clause and was not constitutionally appointed consistent with that provision. However, at no point in the administrative process—whether in his initial application for benefits, before the ALJ, or before the Appeals Council—did Plaintiff ever present the argument that SSA's ALJs are inferior officers under the Appointments Clause. In Lucia, the Supreme Court held that a party "who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." Id. at 2055 (citation omitted) (emphasis added). Plaintiff's failure to assert a challenge to the ALJ's appointment before the agency at any point in the administrative proceedings forfeited his Appointments Clause claim. Because Plaintiff has not asserted "a timely challenge to the constitutional validity of the appointment" of the ALJ,

Lucia, 138 S. Ct. at 2055 (citation omitted), his Appointments Clause challenge does not present a basis for remand.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 11) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 13) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: November 26, 2019

Max O. Cogburn Jr.
United States District Judge